The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Thank you. You may be seated. All right, we'll hear argument now in United States v. Twitty. All right. Good morning, Your Honors, and may it please the Court. For this Court's consideration, Reginald Twitty raises arguments regarding the GPS tracking and the ping information secured by law enforcement in this case. With the Court's permission, I'd like to begin with the warrants that allowed for the GPS device installation. Could you begin with the waiver issue? Absolutely, Your Honor. So that we know what we're dealing with. Sure. So the South Carolina challenge is predicated on what occurred in Mississippi. I think it's reasonable to believe that that is fair game. In docket number 353, for example, it specifically argues that Twitty had an expectation of privacy in the car that was pulled in Mississippi. That's a Joint Appendix 87. Entry 350 specifically argues the Mississippi affidavits failed to establish necessity. That's a Joint Appendix 75. The district court judge also seemed to recognize Wait, necessity, what? Does necessity go to the car? Aren't we talking about whether the waiver is on the car search? There's no necessity on the car search. No, no, that's correct, Your Honor. So, yes. But I would also say, so in footnote 7 of the judge's order, he seems to recognize the intertwined quality of those claims. And that is at Joint Appendix 427. So I think, you know, to the extent that there's any ambiguity as to the waiver issue, that that should be construed against the government and in favor of Twitty. You know, I think these issues are so sufficiently intertwined. Certainly Judge Kain kind of addressed them all. So it's not inherently unfair to the district court for this court to now address these on the merits. And so that is my sort of handling of the waiver issue. So to kind of begin chronologically, you know, tracking device that was placed on the vehicle when it was in Mississippi. And I mean, there is no probable cause for the installation of that device. At the time of that installation, law enforcement had the following facts within its knowledge. It had what it believed was evidence of post-manufacture modification to the car. You had law enforcement's hunch. There was a bill of lading that showed that Twitty was the intended recipient of the car. And that bill of lading, while it struck the officer suspicious, it was still in proper order. And then law enforcement knew that Twitty had prior convictions. But here is what it did not have. Law enforcement did not have evidence of any drugs, did not have any money. I thought there weren't actual drugs, but a canine sniff detected the smell of narcotics in the Nissan with the post-fab compartments under the seat. And that's correct, Your Honor. You don't think that's enough? Well, so they conducted the search based on that canine sniff, and there were no drugs that were found. So, no, I don't think that that's part of an analysis for probable cause at that juncture. I mean, I think when you look at the facts that law enforcement kind of articulates. Just so I'm sure, your argument is that these, like, hidden compartments in the car don't create probable cause that they were being used to transport drugs? Well, I think that it's definitely. Probable cause, right? I'm not saying that they're convicted at trial, but the argument, just so that I understand it, is that these compartments might have been carrying, like, baby supplies or something, right? That they were not put in, that there's no probable cause to believe that these were designed to carry drugs. I mean, the argument is premised on that, right? The argument is that that does not amount to probable cause. Now, whether or not that is reasonable suspicion, I think that's a fair point. But, no, I mean, because at the time that they conduct this search, and they're pulling up the carpet, and they're finding these traps. I mean, what they're not finding is any contraband, any evidence of a crime at that point. And so when you take just sort of those factors into account, that doesn't rise to the level of probable cause. I mean, that's the argument in a nutshell. I mean, you know, the Supreme Court had an opportunity in Jones to determine whether or not there was. I mean, haven't we had cases where we say, like, drug packaging materials give rise to probable cause that they're drugs? But this, again, is just a compartment in a car. So this is not packaging material. Because the compartment could have been used to carry your underwear. Other things. Other things. A few months earlier, right, they discovered drugs in a package with this fellow's name or address or something on it, right? So that comes into sort of factor. Not baby formula or underwear. And that, I mean, so that comes in a little bit later, right? No, that was before. I mean, so that becomes the information that comes in for the South Carolina tracker. Right. Well, they knew he had convictions, but this postal service investigation, that's not the information that was taken to the judge in Mississippi. Right. But the question before us is about South Carolina.  And so that's, we're getting to that. I mean, so because I believe that what happened in South Carolina is sort of predicated on what happened in Mississippi, I just wanted to sort of start with that beginning piece. Yeah, but that's not the whole picture for our analysis.  And I would just sort of say, I mean, at the time that Mississippi decides to place the tracker on the car, I mean, this would have been probably a good time for those officers to pick up the phone and talk to their colleagues in South Carolina and let them know about their suspicions. But that's not what happened. So we've got the GPS tracker on the car. And I think the next question here is whether or not probable cause kind of came into being or developed, you know, from the time of Mississippi once it's into South Carolina. And I think the answer to that is no. So here's the additional information that South Carolina had that Mississippi did not. And that is this postal inspector investigation. So there was an investigation from July 19th of 2018. Now, the tracking order in South Carolina was signed on March 19th of 2019. And, of course, this court recognizes that a valid search warrant may only issue upon allegations of facts so related to the time of the issue of the warrant to justify finding a probable cause at that time. And so what we have here is no reason to believe that the SINTRA that's now in the state of South Carolina had any connection to that investigation that occurred nearly nine months earlier. So it lacks that sort of nexus between the SINTRA and that earlier investigation. And, in fact, during the evidence – Because he's plainly stopped dealing drugs at this point. Perhaps. Did it this one time. Now he's totally off. It's – I mean, it is – No probable cause to believe that what he's been doing he has continued doing. Not – well, no. I mean, we – again, it's sort of the nine months. We've got this nexus requirement. I mean, again, this would have been a really great time to start an additional investigation instead of putting a tracker on a car. And I think that this is an important – Like, yeah, then you have to have – it has to be proximate in time, the warrant that you're seeking, if you're going to investigate that package. But that's not what they're investigating. They're saying the package gives us reason to think that this fellow is in a continuing course of conduct. And the SINTRA is the most recent evidence, the dog sniff at the SINTRA, alerting for narcotics in the hidden compartment. And I do understand the court's sort of observation there. And I would just sort of note that during the evidentiary hearing, when the postal inspector was asked about this, you know, he affirmatively stated that Mr. Twitty was not under investigation after that July 2018 incident. And that is at JA-340. So at the time that the tracker – they sought to place a tracker in South Carolina, the new information that South Carolina had was the postal inspector investigation. The fact that the dog alert that did alert for narcotics, in fact, did not uncover any narcotics. And then you had the fact of the Mississippi warrant that had been previously issued. And again, Your Honors, I mean, these facts do not amount to probable cause. This earlier investigation was too attenuated to be used to justify a GPS tracking device almost nearly a year later. And to the extent that the South Carolina courts relied on the Mississippi warrant, you know, it adopted that warrant's same failings. So fundamentally, there was no probable cause developed in Mississippi. A prudent law enforcement officer would have called South Carolina law enforcement, told them of his or her suspicions, and then allowed South Carolina law enforcement to take over this investigation. Instead, the Mississippi warrant was constitutionally infirm, and the infirmity flows to the subsequent South Carolina GPS tracker warrant. Regarding – I'd like to switch to the late returns on the GPS and the ping warrants. You know, they were filed with the court roughly 15 months after they were initially issued. And how was appellant prejudiced by the late returns? So it's less being prejudiced than, I think, illustrative of how law enforcement sort of viewed all of this. I mean, I think it shows the extent to which law enforcement's kind of fast and loose with the warrant requirements. But it's also – I mean, there's a rule. I mean, there's a rule, 41, and there's a reason why we have these rules. So you don't actually want us to do anything about the late returns other than to take it as one more point in the totality of what happened here as being sort of incompetent and negligent and not caring about following the rules. I mean, I think, you know, it's definitely illustrative. It's hard to make a prejudice argument, candidly. But I do think it cuts against any sort of liaison, good faith arguments that they may try to avail themselves of. And these are – I just want to sort of say, I mean, you know, under the rules, they had 10 days to file these with the courts. And, I mean, 15 months is more than just a mistake. It's more than just being busy. Less than 28 years. It is less than 28 years. And I believe I will remain the – And it wasn't just one return. It was returns plural that they just didn't do. They just didn't do it. And that's accurate, with your honors. All right. Thank you. Ms. Washington. May it please the Court. Lisa Washington for the United States. Before I begin, there's just one thing that I do want to clear up. There was a postal inspection investigation started after the 2018, the July 2018 seizure. It was not active. The postal inspector testified at JA 316 that he opened the package and that he was working on another investigation. And he communicated with his colleagues in California and put it to the side. He did de-conflict with HSI at the time. But the investigation in South Carolina did not begin in earnest until the Mississippi stop in March of 2019. After that, certainly the postal inspection case continued, and there was evidence seized that there were multiple other packages of drugs and or cash from California to Mr. Twitty and his associates in Greenville. Your honors, to the extent or if the Court determines that Mr. Twitty has indeed preserved his right to challenge the Mississippi search as a basis for challenging the South Carolina warrant, I won't belabor that point. I understand that the district court relied in part on the activities in Mississippi during the search of the Nissan Sentra. Just so I understand the point here, I mean, the waiver allows the challenge of the court's order as that order relates to the defendant's motions. Yes, your honor. I totally get the defendant's motions don't make the argument, right? But, you know, Chief Judge Cain's pretty good at this, right? 77 pages worth. He sort of went through it. And it seems to me if we sort of like use the natural understanding of the words as that order relates to, we would sort of say that the judge's order relates to those issues. Yes, your honor. I agree with the defendant on that on that point. The government's job to make sure that the agreement reflected the meeting of the minds between the parties at the time of the plea. We could have done better and we didn't. So I won't belabor that issue anymore. Thank you. And I do believe, your honor, for the record that Judge Cain's was correct in finding that or in denying the defendant's motion to suppress both the search warrant in Mississippi and his motion in regards to the search warrant in South Carolina, the GPS warrants. But if the court has no further questions on the waiver issue and the legality of the Mississippi stop, then I'll move on to the good faith exception. Because the government believes that there is evidence in the record for this court, although Judge Cain did not directly on an alternative basis deny the defendant's motion under the good faith exception. I do believe there's sufficient evidence in the record for this court to do so. When we consider the factors, no claim has been made by Mr. Twitty that Special Agent Criswell was dishonest or reckless with the truth in his warrant application in South Carolina. There's no claim that the magistrate judge who signed it acted as a rubber stamp. I think the claim boils down to whether or not the warrant relied on illegally obtained evidence in Mississippi. To the extent that's the argument, Judge, I want to make sure to point out exactly what we're talking about that the defendant contests as far as that search is concerned in Mississippi. There was no search until, arguably there was no search until the officers pulled up the carpet in the Nissan Sentra. Judge Cain found that whether or not that exceeded the scope of the driver of the car hauler's consent was of no significance because he determined that Deputy Johnson, at that point, at the point he pulled up the carpet in the Sentra and discovered the additional sheet meddling, he had probable cause to do so. But the main point is that's the only search that occurred. Deputy Johnson had, by the time he had done that, inspected the undercarriage of the vehicle just by observation. From the exterior of the vehicle, he had noticed the tooling on the inside of the vehicle with the consent of the driver, and the defendant does not contest that the driver was able to provide valid consent up to the point where Johnson pulled up the carpeting. So the only search that they're contesting is the pulling up of the carpeting. The only evidence that was obtained or arguably obtained as a result of that search, to the extent that it was illegal, was seeing the sheet meddling, sheet metal, the additional layer of sheet metal. And if that, in some way, led to the seizure or the discovery of the aftermarket compartments once they got it off site, then that's the only piece of information that Special Agent Criswell and the district court relied on in determining whether or not there was probable cause for the South Carolina GPS warrant. The defendant does not challenge the stop at all. And I would point out that in addition to the lifting of the carpet Judge Cain found was supported by probable cause, there was also an intervening act. The hauler was asked and consented to going to a place more safe where they could conduct a search. At the shop that they drove off the highway to, the officers ran a drug dog around the hauler. The dog alerted for the presence of drugs at the Nissan. That authorized the complete search of the Nissan, and that is when the aftermarket compartments were discovered. So Special Agent Criswell did all he could do. There was no reason for him to know, let alone Deputy Johnson, who was working on an unrelated investigation at the time, that there might have been some illegality in pulling up the carpet. That's the unlawful activity that we have. That's it. They don't challenge the search. I mean, they don't challenge the stop. Could you go through your Leon good faith argument again on that?  There's no claim that Special Agent Criswell was dishonest or reckless with the truth. There's no claim that the magistrate acted as a rubber stamp. The claim is that the warrant was so lacking in probable cause that the agent could not have reasonably relied on it. To that end, I think the argument is that he relied on unlawfully obtained evidence by virtue of the search, the pulling up of the carpet. The government does not agree that that was an unlawful search, of course, but to the extent that that's the argument, that's it. That's all we're working with. We're not talking about the entire duration of the traffic stop. In fact, they don't even challenge the stop at all. They challenge the driver's consent, the car hauler driver's consent, only to the extent that they say that it did not authorize it. And are we just presuming that that car was appellant's, that he even had any privacy interest in that at all? The hauler provided the bill of lading to the deputy. In this particular case, the Nissan Sentra was being shipped from an individual in California to Mr. Twitty. So does the government concede that appellant had a privacy interest in that car? No, Your Honor. No, Your Honor. Judge Kane just assumed it away. Just assumed it away. And under Crowder, the court found that the hauler had the authority to give valid consent for the search of the vehicle because it was unlocked. He had control. Right. I'm trying to understand why appellant would have anything to argue about since I don't know how he has a privacy interest in the car on that hauler. Well, I think it's wrapped up in his argument that the search warrant for the location data was deficient or was not, did not contain sufficient probable cause. Right. I just don't think the car was his at that time. Well, this is not your, I'm on your side on this. So you don't have to argue their side of that. I just wonder why it, yeah, as Judge Richardson said, it was just assumed away, that part of the beginning part of an analysis. Yes, Your Honor. Okay. So back to Special Agent Criswell. He did all he could do. He relied on the information provided to him by an officer in another agency in another jurisdiction to And that's why good faith should apply. That's one of the reasons why good faith should apply. I've read, Your Honor, the court's Moat decision in declining to apply the good faith exception in the case where officers entered a home without a warrant and during a struggle in a protective suite discovered drugs and guns and then turned around and used the illegally obtained evidence in order to get a search warrant without disclosing the illegal nature of how they got into the house in the first place. This is not that. Special Agent Criswell disclosed fully that Officer Johnson pulled up the carpet when he inspected the car in Mississippi. The magistrate had that before it when it decided to issue the warrant. What do you have to say about the repeated Rule 41 violations by law enforcement here? Your Honor, there was much discussion about that during the two-day suppression hearing. Agent Criswell testified for a good bulk of the hearing. He was asked that multiple times. Each time, Judge Kane interrupted and questioned him himself. At the end, Judge Kane found in his order that Special Agent Criswell did not intentionally or deliberately fail to file the timely returns. The agent testified that it was an administrative oversight. He just overlooked one of his administrative duties. For 15 months and four separate warrants, it was an administrative oversight. Is that the argument? That was the testimony, Your Honor. The testimony. And the District Court found that testimony credible. Is there any remedy when law enforcement fails to abide by a rule to return a warrant based on just pure incompetence? Well, Your Honor, I don't know that it's incompetence. What is it? The testimony was that he was working on multiple investigations at the time. So negligence? I don't know that. It was unintentional. It was not deliberate. Okay. So does it have to be intentional for there to be a remedy? Yes, Your Honor. That's the guidance from this court and many others. Yeah, that was my question. So there's no remedy for incompetence or negligence or administrative oversight? Well, there's a burden on the defendant. He's got to show some prejudice. And Judge Kain found time and time again to give him ample opportunity to show . . . And I think an appellant has conceded he can't show prejudice. So you're correct. We're bound by the law of this circuit and many others. The search would have occurred regardless of whether or not Special Agent Chris will return the returns on time. There is some penalty, I suppose, of dozens of cases where there's an unnecessary delay in executing a warrant. But that's not what we have here. This is an after-the-fact ministerial duty. And the law does not permit or does not provide for suppression of the evidence in the case where the conduct was unintentional. What would we or the district court have to have to find a failure to return the warrants four times over 15 months intentional? I don't know. Is a habit or a pattern or practice of not returning the warrant returns intentional? I think each time stands on its own. In this particular case, the agent testified that he was tied up with multiple investigations. This one came about unexpectedly. He was not working with law enforcement in Mississippi. This was not a coordinated effort. In fact, the postal case was kind of sitting on ice until they had time to get to it. It's such a basic thing to return a warrant. That's part of it. It is. It's hard to imagine law enforcement not returning a warrant and just calling that administrative oversight. That's just what you do. It's a part of the process. It's difficult to think that wasn't intentional, but grossly negligent, I guess. And Judge Koehn made the same observation. I think that the word has been sent, if it wasn't before, that this is a part of the responsibility officers or agents take on when they apply to the magistrates for search warrants. Go ahead. I'll ask opposing counsel. Your Honor, with regard to the argument as to the wiretap violation, which I believe is the only one left that was preserved, there just was no wiretap used in this case. Mr. Twitty insists that the law should be different and the Wiretap Act should apply to ping orders or real tracking orders, and that's just not the case. The agent testified over and over again, and there's no evidence that any wiretap was asked for or obtained by law enforcement. But I would like to wrap up, Your Honor, by just saying that the warrant application submitted to the magistrate by Special Agent Criswell, found at JA, starting at JA 585, contains sufficient probable cause for the issuance of the warrant. There's nothing on its face by which Special Agent Criswell should have known that the warrant was deficient. It identified the vehicle to be tracked by VIN number, make, and model. The evidence concerning the July 2018 seizure of the postal package was added to the evidence, was obtained in Mississippi. Special Agent Criswell knew that Deputy Johnson had obtained, had observed all of the indicators that the car had been modified, and then ultimately determined that it had been when he saw or when he inspected the car more fully at the shop and uncovered two aftermarket compartments on which a drug dog had alerted. To the extent that the court wants to hear about the argument that the mail package seizure in 2018 was stale, I will be happy to answer any questions. But to the extent there are no questions, to get government rest on its brief, and ask the court to affirm the district court. All right. Thank you, Ms. Washington. Thank you, Your Honors. I was actually rereading, Judge Thacker, your dissent in Stevens again this morning. And in the language in Leon that you spoke about, it was that, you know, responsible law enforcement officers will take care to learn what is required of them and will conform their conduct. And that's why we have the prophylactic remedy of the exclusionary rule. But there are things that happened in this case that I think sort of undermine the government's reliance on Leon. I mean, first of all, the pulling up of the carpet in Mississippi. You know, this was not justified by the automobile exception. And I think pretty clearly this was a car that was on a car hauler. It was more like the car that was not a readily mobile car. It was more like a car being on blocks than being readily mobile, which is what's required under the Supreme Court in Pennsylvania v. LeBron. But also, I mean, at the time that the Mississippi law enforcement officers were putting this tracker on the car, I mean, they did not seek any federal authority for doing this, even though the federal court in Mississippi was 10 to 15 miles away. They didn't have any discussions with any prosecutors at all. They simply went ahead and put this tracker on the car. You know, I think this court can also take into account the late returns on the warrants. I think that factors into a Leon good faith analysis. Well, what would law enforcement have to gain by not returning the warrants on time? I mean, well, I think I'm not sure what they would have to gain. What I think it indicates is an object sort of lack of concern about the constitutional rights at play here. I mean, you know, when we talk about the GPS tracking system, this is kind of what, you know, from Jones through Carpenter. I mean, we know that these sorts of searches are incredibly intrusive, right? I mean, it can show you somebody's gone to a doctor's office where they're going to church, whether they're attending political meetings. I mean, any sort of information that reveals a lot about the character of a person. These are the sorts of things that this court recognized in leaders of a beautiful struggle. So, I mean, we know that rules matter. We know that Rule 41 matters. We know that the Fourth Amendment matters. And when law enforcement violates these rules, I mean, there needs to be a remedy. And the remedy that we're asking this court to grant in this case is to give Mr. Twitty a new trial. If there are any other questions, I'm happy to entertain them. Do you have a question? Okay. Thank you. All right. Thank you. All right. We appreciate argument of both counsel. And we'll come down and greet counsel and go to our last case.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing